UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

against

RAHEEM J. BRENNERMAN,

Defendant.

No. 17-cr-337 (RJS)

MEMORANDUM & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Raheem J. Brennerman, incarcerated and proceeding pro se, filed an omnibus motion seeking vacatur of his convictions and sentence and the Court's recusal from presiding over further proceedings in this case. (Doc. No. 269 (the "Petition").)[1]  He also requests the return of certain personal items allegedly possessed by the government. (Doc. No. 275.)  For the reasons that follow, Brennerman's requests are DENIED.

## I. BACKGROUND

On December 6, 2017, a jury found Brennerman guilty of conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349; bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and visa fraud, in violation of 18 U.S.C. § 1546(a).  (Doc. No. 89.)  On November 19, 2018, the Court sentenced Brennerman to 144 months' imprisonment and entered a judgment of conviction.  (Doc. No. 203.)  The Court amended the judgement of conviction on February 12, 2019, ordering Brennerman to pay restitution in the amount of $5,264,176.19.  (Doc. No. 223.)  On June 24, 2020, the Court entered a preliminary order of forfeiture imposing a money judgment against Brennerman in the amount

---

[1] Brennerman supplemented his omnibus motion with two additional pro se filings.  (Doc Nos. 272, 274.)

of $4,400,000.  (Doc. No. 245.)  On August 13, 2021, after finding that the government had not

been able to locate, obtain, or collect any assets traceable to the proceeds of Brennerman's offenses

despite the exercise of due diligence, the Court entered a preliminary order forfeiting two luxury

watches owned by Brennerman as substitute assets.  (Doc. No. 262.)

Brennerman appealed from the amended judgment of conviction ("Judgment"), *see United States v. Brennerman (Brennerman I)*, 818 F. App'x 25 (2d Cir. 2020), which the Second Circuit affirmed, *see id.* at 30.  In affirming the Judgment, the Second Circuit rejected Brennerman's claims that there was insufficient evidence to convict him on the conspiracy, bank fraud, and wire fraud charges, and that the government violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce the complete underwriting file of the Industrial and Commercial Bank of China's London branch ("ICBC"), *see Brennerman I*, 818 F. App'x at 28–30. The Supreme Court denied certiorari on January 25, 2021.  *See Brennerman v. United States (Brennerman II)*, 141 S. Ct. 1280 (2021).

While Brennerman's direct appeal was pending, Brennerman filed a number of letters alleging prosecutorial misconduct and seeking various forms of collateral relief.  (Doc. Nos. 225, 226, 227, 228, 229.)  The Court denied Brennerman's petition without prejudice to renewal following the resolution of his direct appeal.  (Doc. No. 230.)  Brennerman also filed a number of discovery requests related to ICBC's underwriting file (Doc. Nos. 236, 248, 250, 254), which the Court denied (Doc. Nos. 242, 249, 251, 253, 255).  The instant omnibus motion ensued.

## II.   DISCUSSION

### A.  Habeas Petition

Liberally construed, Brennerman's omnibus motion includes a pro se habeas petition that attacks his convictions and sentence under 28 U.S.C. § 2255.  (Petition at 21–35.)  Specifically,

Brennerman argues that (i) the trial evidence was insufficient to show that he intended to defraud an institution insured by the Federal Deposit Insurance Corporation ("FDIC") as required for bank fraud; (ii) the government's failure to obtain and disclose ICBC's complete underwriting file violated his constitutional rights; and (iii) he received ineffective assistance of counsel at trial. (*Id.*)  A district court may grant habeas relief under section 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted).  As discussed below, Brennerman has failed to meet this standard, since he is collaterally estopped from relitigating the first and second grounds for his petition, and with respect to the third ground, Brennerman's claim of ineffective assistance of counsel fails on the merits.

> 1.  *Collateral Estoppel*

Under 28 U.S.C. § 2255, a prisoner "in custody" under a federal court's sentence "may move the court which imposed [that] sentence to vacate, set aside[,] or correct the sentence" on the grounds that the sentence "was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  As a general rule, petitions under section 2255 "cannot be used to relitigate questions which were raised and considered on direct appeal."  *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (internal quotation marks omitted); *see also Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980) ("[I]t is well-settled that 'once a matter had been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack.'" (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977))).  A court sitting in habeas jurisdiction may revisit such questions "only where there has been an intervening change in the law and the new law would have exonerated [the] defendant had

3

it been in force before the conviction was affirmed on direct appeal." *Chin*, 622 F.2d at 1092. The defendant bears the burden to affirmatively "show that there is new law which, when applied to [his or her] claims, would result in a different disposition," *id.*; absent such a showing, the defendant is, "as a threshold matter, . . . collaterally estopped from relitigating [such] issue[s]," *Sanin*, 252 F.3d at 83.

The crux of Brennerman's habeas arguments – that the trial evidence was insufficient to show that he intended to defraud an institution insured by FDIC and that the government's failure to obtain and produce ICBC's complete underwriting file violated his constitutional rights – was presented to, considered by, and ultimately rejected on the merits by the Second Circuit on direct appeal. Specifically, the Second Circuit concluded that "the record did establish that [Brennerman] defrauded Morgan Stanley, an FDIC-insured institution," *Brennerman I*, 818 F. App'x at 28, and that "the government has not violated its disclosure obligation," *id* at 30. Because Brennerman's claims were "decided adversely . . . on direct appeal," *Chin*, 622 F.2d at 1092, there arises a "threshold" presumption that he is "collaterally estopped from relitigating [such] issue[s]" in "a [section] 2255 petition." *Sanin*, 252 F.3d at 83. Brennerman has not even attempted to show that "there has been an intervening change in the law and the new law would have exonerated [him]." *Chin*, 622 F.2d at 1092. Instead, he devotes pages of his motion alleging "[e]rror(s)" in the Second Circuit's rulings on direct appeal. (Petition at 13–21.) But this Court is not permitted to review opinions of the Second Circuit, and the Supreme Court has already denied Brennerman's certiorari petition challenging the Second Circuit's ruling. *See Brennerman II*, 141 S. Ct. at 1280.

### 2. Ineffective Assistance of Counsel

Brennerman also claims that he was denied the effective assistance of counsel at trial. (Petition at 37.) Although ineffective-assistance-of-counsel claims may be raised for the first time

in a section 2255 petition rather than on direct appeal, *see Massaro v. United States*, 538 U.S. 500, 504 (2003), it is nevertheless clear that Brennerman's claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel.  U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.").  When challenging the effectiveness of counsel's assistance, a defendant must demonstrate both that (i) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (ii) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  A court must reject a defendant's ineffective-assistance-of-counsel claim if it fails to meet either prong of the *Strickland* standard.  *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

Under *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' . . . and may not use hindsight to second-guess his strategy choices."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).  The court must start from the presumption that counsel's conduct fell "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."  *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91).  Because there are many ways to provide effective assistance in any given case, and because "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," there is a strong presumption that counsel rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

With respect to *Strickland*'s second prong, a "reasonable probability" that the outcome would have been different but for counsel's deficient performance is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A]n 'error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691). In other words, to find prejudice, a court must conclude that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland*, 466 U.S. at 686).

Brennerman claims that he received ineffective assistance because his trial counsel failed to argue that Morgan Stanley Smith Barney, LLC was not an FDIC-insured institution as required for bank fraud. He also asserts that his counsel should have obtained and introduced at trial ICBC's underwriting file and his birth certificate to "demonstrate his innocence." (Petition at 41.) None of these arguments is persuasive.

As an initial matter, the record reveals that Brennerman's counsel vigorously pursued the FDIC issue before the jury. For instance, counsel elicited testimony from a government witness that Morgan Stanley Smith Barney, LLC was not insured by the FDIC. (Tr. at 1059:9–11.) He further elicited testimony that affiliate entities within a corporate family – like Morgan Stanley Smith Barney, LLC and Morgan Stanley & Company LLC – must obtain "separate certificate[s] of insurance to be FDIC insured." (Tr. at 1060:24–1061:5.) In summation, Brennerman's counsel again argued that "the law absolutely requires that the bank . . . targeted in a fraud . . . be insured by the FDIC" (Tr. at 1538:9–10), and that "Brennerman was not looking to take . . . money" from

"the wealth management arm of Morgan Stanley, . . . the only arm of Morgan Stanley [at issue] that . . . was FDIC insured" (Tr. at 1539:9–14).  In short, Brennerman's allegation that his counsel failed to press the FDIC argument before the jury is plainly contradicted by the record.  *See Slevin v. United States*, 234 F.3d 1263 (2d Cir. 2000) (agreeing with the district court that the defendant failed to establish an ineffective-assistance claim because the defendant's allegations were "contradicted in several instances by evidence in the record"); *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) (collecting cases).  As a result, Brennerman's "bald assertion[s]" to the contrary are insufficient to meet either prong of the *Strickland* standard.  *United States v. Blau*, 159 F.3d 68, 75 (2d Cir. 1998).

Brennerman's remaining allegations of ineffective assistance also fail.  First, Brennerman argues that his counsel should have requested that the Court "order and compel" the production of ICBC's "pertinent underwriting file."  (Petition at 39.)  But as the Second Circuit ruled on direct appeal, the underwriting file allegedly possessed by ICBC was outside the scope of the government's disclosure obligations, and "[t]he only indication that such documents are extant comes from Brennerman's bare assertions."  *Brennerman II*, 818 F. App'x at 30.  This Court also previously denied Brennerman's discovery requests of the underwriting file on numerous occasions, finding, among other things, that this Court has no jurisdiction over ICBC – "a foreign bank located approximately 3,500 miles from the courthouse."  (Doc. No. 249 at 2 (quoting *United States v. Brennerman*, No. 17-cr-155 (LAK), 2017 WL 4513563, at *2 (S.D.N.Y. Sept. 1, 2017)); *see also* Doc. Nos. 242, 249, 251, 253, 255.)  Because it would have been "futile or frivolous" for trial counsel to request that the Court compel production of unspecified documents from an entity that was beyond the Court's jurisdiction, *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987), the Court cannot say that trial counsel's failure to make such a request "fell below an

objective standard of reasonableness" as required under the first prong of the *Strickland* standard. *Strickland*, 466 U.S. at 687–88; *see also Johnson v. United States*, 779 F.3d 125, 130 (2d Cir. 2015) ("[C]ounsel's failure to [raise] the arguments [that defendant] advances now was not objectively unreasonable, since those arguments are . . . meritless.").

Second, Brennerman claims in a conclusory fashion that his counsel provided ineffective assistance by failing to introduce his birth certificate at trial to demonstrate his "innocence" of visa fraud. (Petition at 41.) The jury found Brennerman guilty under Count Four of the indictment, which charged him with "us[ing] and possess[ing] a visa that he had procured by making false statements regarding, among other things, his name, national origin, and the nature, scope and status of the corporate entity which sponsored his application." (Doc. No. 1.) Under the second prong of the *Strickland* standard, a defendant must show prejudice by demonstrating that "but for counsel's [alleged] errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Second Circuit has long held that "overwhelming" evidence of guilt may negate any "reasonable probability that the outcome of the trial would have been different." *Wise v. Smith*, 735 F.2d 735, 738–39 (2d Cir. 1984) (internal quotation marks omitted).

Here, even if trial counsel could introduce Brennerman's birth certificate to demonstrate that Brennerman did not make any false statements regarding his place of birth, the trial record demonstrated that Brennerman made numerous other false statements to procure his visa, including regarding the "nature, scope and status of the corporate entity which sponsored his application." (Doc. No. 1.)[2] For instance, the government presented evidence to the jury showing that Brennerman falsely claimed on his visa application that he never previously applied for a visa to

---

[2] The government presented evidence at trial showing that Brennerman claimed Nigeria as his place of birth on his 2000 visa application (Tr. at 785:14–17) and the United Kingdom as his place of birth on his 2012 visa application (Tr. at 117:11–17). Clearly, at least one of these two representations is false, and Brennerman has failed to explain how his birth certificate would reconcile this inconsistency.

enter the United States (Tr. at 783:11–787:6); that he never held any nationality other than his British citizenship (Tr. at 789:15–19); that he was the CEO of a major oil company (Tr. at 713:10–21); that he made $720,000 in salary (Tr. at 109:7–17); and that the oil company he worked for generated more than $40 million in annual revenue (Tr. at 109:17–20).  In light of this "overwhelming" evidence of Brennerman's guilt under Count Four of the indictment, *Wise*, 735 F.2d at 739, there is no reason to think that the outcome of the trial "would have been different" but for his counsel's alleged errors, *Strickland*, 466 U.S. at 694.  Accordingly, because Brennerman has failed to show that the judgment was "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack," Brennerman's habeas petition is DENIED.  28 U.S.C. § 2255(a).[3]

### B.  Recusal

Brennerman moves for the Court's recusal from further presiding over this matter under 28 U.S.C. § 455(a).  Brennerman argues that the Court has "misrepresent[ed] and distort[ed] evidence to falsely satisfy the essential element and law to convict and imprison [him]" and that, as a result, "a reasonable person . . . would conclude that [the Court's] impartiality in this case reasonably might be questioned."  (Petition at 48 (internal quotation marks omitted).)

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Because impartiality is evaluated "on an *objective* basis," recusal is required when "a reasonable person, knowing all the facts, would conclude that the trial judge's impartiality could reasonably be questioned."  *United States v. Wedd*, 993 F.3d 104, 114 (2d Cir.

---

[3] Brennerman also requests that the Court stay the enforcement of the Judgment and release him on bail pending the resolution of his omnibus motion.  Because the Court denies Brennerman's omnibus motion, his request for stay and release is DENIED as moot.

2021) (internal quotation marks omitted); *see also United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).  Although it is possible for a judge's comments and behavior in court to give rise to a reason to question his impartiality, *see Ligon v. City of New York*, 736 F.3d 118, 124–26 (2d Cir. 2013), such cases are rare, and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Indeed, the law of this Circuit is clear that a judge "is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."  *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

Recusal is not warranted in this case because no "reasonable person, knowing all the facts, would conclude that the [Court's] impartiality could reasonably be questioned."  *Wedd*, 993 F.3d at 114 (internal quotation marks omitted).  Although Brennerman accuses the Court of "misrepresenting and distorting the evidence" (Petition at 48), Brennerman points to no evidence that supports his accusation (*see id.*; Doc. No. 272 at 2; Doc. No. 274 at 2).  Brennerman's disagreement with the Court's rulings is clearly not a sufficient basis for the Court's recusal, and the fact that Brennerman might prefer a different judge is also of no moment.  "Litigants are entitled to an unbiased judge; not to a judge of their choosing."  *In re Drexel Burnham*, 861 F.2d at 1312.  Because Brennerman failed to provide any valid basis for recusal, the Court is "obliged not to recuse."  *Id.*  Accordingly, Brennerman's request for recusal is DENIED.

### C.  Return of Property

Brennerman also requests the return of certain personal items allegedly in the government's possession.  (Doc. No. 275.)  Under Rule 41(g) of the Federal Rules of Criminal Procedure, "[a] person aggrieved . . . by a deprivation of property may move for the property's return."  Fed. R. Crim. P. 41(g).  A motion brought under Rule 41(g) is treated "as a civil complaint for equitable

relief." *Bertin v. United States*, 478 F.3d 489, 493 (2d Cir. 2007).  But such relief is warranted only if the moving party can "demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005).  The moving party bears the burden of proving these three elements by a preponderance of the evidence.  *See* 3A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 690 (4th ed. 2019).

In this case, two of the items identified in Brennerman's letter are luxury watches subject to the Court's preliminary order of forfeiture.  (*See* Doc. No. 262.)  Certainly, Brennerman is not entitled to the return of those watches.  *See* 18 U.S.C. § 853(p); Fed. R. Crim. P. 32.2.  As for the other items that Brennerman seeks, the government confirmed in its letter that all other personal items obtained from Brennerman had been shipped to Brennerman's designated representative on March 16, 2022.  (Doc. No. 279.).  The government also conducted a search of its archived records and evidence vault, which revealed no additional property that belonged to Brennerman within the government's custody.  (*Id.*)  Since Brennerman has not submitted any evidence, such as a declaration from the designated representative, indicating that the property was not delivered, the Court cannot find that Brennerman has carried his burden under Rule 42(g).  Accordingly, Brennerman's motion for the return of property is denied.

## III.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Brennerman's habeas petition, recusal motion, request for stay of the enforcement of the Judgment and release on bail, and request for the return of personal items are DENIED with prejudice.

In addition, because Brennerman has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability with respect to his habeas petition, *see Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, Brennerman may not proceed *in forma pauperis*, *see Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to terminate the open motions in Doc. Nos. 269, 274, and 275, and mail a copy of this order to Raheem J. Brennerman.

SO ORDERED.

Dated:      December 31, 2022
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation